## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DUTCH O'NEAL, | ) Civ. No. 13-00058 ACK-RLP |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CENTURY INSURANCE COMPANY, a | ) |
| foreign corporation, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND/OR IMPROPER VENUE, OR IN THE ALTERNATIVE, TO TRANSFER VENUE

The Court hereby DENIES Century's Motion to Dismiss for Lack of Personal Jurisdiction and/or Improper Venue, or in the Alternative, to Transfer Venue. The Court finds that Mr. O'Neal has made a prima facie showing of jurisdictional facts, and that venue is proper in this district because corporations over whom a court can exercise personal jurisdiction are deemed to "reside" in that court's district. The Court DENIES Century's Motion To Transfer Venue because, under a recent amendment to 28 U.S.C. § 1404(d), a federal district court can no longer transfer venue to the District Court of the Northern Mariana Islands if venue was proper in the original court.

### PROCEDURAL BACKGROUND

Plaintiff Dutch O'Neal alleges that Defendant Century Insurance Company denied or delayed workers' compensation benefits that he was owed.

Mr. O'Neal filed his Complaint on February 4, 2013.
Doc. No. 1. On April 8, 2013, Century filed the instant Motion
for lack of personal jurisdiction or improper venue, or in the
alternative, to transfer venue. Doc. No. 8 ("Motion"). The Motion
was supported by a declaration from Century's General Manager
("Corpuz Decl.") and two exhibits. Mr. O'Neal timely filed an
Opposition on July 15, 2013, which was supported by declarations
from Mr. O'Neal ("O'Neal Decl."), one of Mr. O'Neal's medical
case managers ("Smith Decl."), and counsel, as well as numerous
exhibits. Doc. No. 14. Century timely filed its Reply on July 22,
2013, which was supported by declarations from Century's
Corporate Paralegal Officer ("Mariano Decl.") and a former Human
Resources Manager for Mr. O'Neal's employer ("Villanueva Decl."),
and an exhibit. Doc. No. 15.

## FACTUAL BACKGROUND[1]

## I.    The Initial Injury and Surrounding Events

Plaintiff Dutch O'Neal is and was a Hawai'i resident at
"all times relevant" to this case. Compl. ¶ 1. Mr. O'Neal worked
as an Executive Chef for the Dai-ichi Hotel ("the Hotel") in

---

[1] The facts as recited in this Order are for the purpose of
disposing of the current Motion and are not to be construed as
findings of fact that the parties may rely on in future
proceedings. For the purpose of deciding the instant Motion, the
Court accepts as true all factual allegations contained within
Mr. O'Neal's Complaint, except for any assertions in the
Complaint which are contradicted by Century's declarations. See
Alexander v. Circus Circus Enters., Inc., 972 F.2d 261, 262 (9th
Cir. 1992) (citations omitted). The Court also resolves all
factual disputes between the parties' declarations in
Mr. O'Neal's favor. See Wash. Shoe Co. v. A-Z Sporting Goods,
Inc., 704 F.3d 668, 672 (9th Cir. 2012).

2

Saipan, Commonwealth of the Northern Mariana Islands ("CNMI").[2/] O'Neal Decl. ¶ 2. The Hotel had a workers' compensation insurance policy issued by Defendant Century Insurance Company. Compl. ¶ 6. Century, which is incorporated in the CNMI, (1) has its principal place of business in Saipan, (2) does not have any employees in Hawai'i, (3) does not own any real or personal property in Hawai'i, (4) does not have an agent in Hawai'i for service of process, (5) does not have any licenses or permits issued by the State of Hawai'i, and (6) does not pay taxes in Hawai'i. Corpuz Decl. ¶ 3, 10.

On December 10, 2003, Mr. O'Neal injured his lower back and one of his knees when he slipped and fell while working at the Hotel. Compl. ¶ 5. His treating physician, Dr. Thomas Austin, ordered an MRI in order to better diagnose the precise nature of Mr. O'Neal's back injury. O'Neal Decl. ¶ 4. Because Saipan did not have an MRI machine, Dr. Austin requested an appointment at a facility on Guam, the earliest available date for which was apparently in mid-February 2004. Opp. at 1-2; O'Neal Decl. ¶ 5.

Mr. O'Neal "was in excruciating pain" such that he "desired rapid diagnosis and treatment." O'Neal Decl. ¶ 5. He met with the General Manager of the Hotel, Mark Swinton, at some point in January 2004 to discuss medical treatment. Id. During that meeting, Mr. Swinton told Mr. O'Neal about the Guam appointment and said that if Mr. O'Neal could secure an earlier

---

[2/] The Dai-ichi Hotel has since changed its name to Fiesta Resort and Spa. Compl. ¶ 5.

MRI date in Hawai'i, Mr. Swinton would send Mr. O'Neal there for treatment. Id. Mr. O'Neal was able to obtain an earlier appointment on Maui and informed Mr. Swinton of this, who then gave him an airline ticket to Hawai'i. Id.

On January 27, 2004, the Hotel submitted a claim on Mr. O'Neal's behalf to the CNMI's Workers' Compensation Commission ("the Commission"). Motion at 4; Corpuz Decl. § 7; O'Neal Decl. § 6. Then, on January 30, 2004, Dominic Villanueva, the Hotel's Human Resources Manager, sent a fax to Frank Cabrera of the Commission, seeking Mr. Cabrera's "expert advice on our current WCC case." Reply, Ex. 1. Mr. Villanueva told Mr. Cabrera that Mr. O'Neal wanted to travel to Hawai'i for a second opinion because there were no other orthopedic physicians on Saipan besides Dr. Austin, and Mr. O'Neal believed that he did not receive "intensive and satisfactory" medical care from Dr. Austin. Id. Mr. Villanueva asked for "the intervention of the WCC Administrator if the insurance carrier refuses coverage of off-island hospitalization/treatment based on non-referral by CHC doctor." Id.

In this communication, Mr. Villanueva cited provisions from the Commission's Rules and Regulations, including one dealing with changing physicians:

> Whenever the employee has made his initial, free choice of an attending physician, he may not thereafter change physicians without the prior written consent of the employer (or carrier) or Administrator. Such consent shall be given in cases where an employee's initial choice was not a specialist whose services are necessary for, and appropriate to, the

4

> proper care and treatment of the compensable
> injury or disease. In all other cases,
> consent may be given upon a showing of good
> cause for change.

Id. (emphasis removed). Although Mr. Villanueva's fax suggests
that the Hotel was worried about whether Century would cover
Mr. O'Neal's treatment in Hawai'i, neither party has presented
evidence showing whether the Hotel discussed Mr. O'Neal's travel
to Hawai'i with Century. Similarly, the record does not show
whether Century received a copy of Mr. Villanueva's fax or when
Century was notified of the workers' compensation claim.

## II. **Mr. O'Neal's Initial Treatment in Hawai'i**

Mr. O'Neal flew to Hawai'i, as arranged with the Hotel,
on February 10, 2004, and underwent an MRI on February 13, 2004.
Compl. ¶ 7. At some point shortly after the MRI, Mr. O'Neal
reported his status to Mr. Swinton, who e-mailed Mr. O'Neal on
February 23, 2004, to say, "We are very pleased to know that you
have found some doctors you have confidence in and the proper
tests have been completed." Opp., Ex. D. Mr. Swinton further told
Mr. O'Neal that "[w]e are very supportive and committed to your
therapy and we know very shortly you will be back pressing
forward," and that the Hotel had decided to pay Mr. O'Neal's full
salary through March 2004. Id.

Mr. Swinton e-mailed again Mr. O'Neal on March 2, 2004,
asking for an update on Mr. O'Neal's treatment. Opp., Ex. E.
Mr. Swinton also assigned Mr. O'Neal two work-related tasks to be
completed before he returned to Saipan. Id. Mr. O'Neal e-mailed
Mr. Swinton and Mr. Villanueva on March 12, 2004, to tell them

that his surgeon had recommended knee surgery, to be performed on April 20, 2004. Opp., Ex. F. Although Mr. O'Neal did not mention it in his e-mail, the MRI also showed that Mr. O'Neal required back surgery. Compl. § 7. The Hotel terminated Mr. O'Neal's employment sometime in April 2004. O'Neal Decl. ¶ 10.

**III.  Century Begins its Direct Oversight of Mr. O'Neal's Care**

Around this time, Century apparently began to consider and then delayed its approval of Mr. O'Neal's back and knee surgeries. Compl. § 8. On or around May 19, 2004, Mr. O'Neal suffered a pulmonary embolism that required treatment at the Maui Memorial Medical Center. Id. § 8; Corpuz Decl. § 8. He claims that the embolism was caused by Century's "lengthy delays" in approving his surgeries. O'Neal Decl. ¶ 13; see Compl. ¶ 8. Mr. O'Neal ultimately underwent back surgery on November 10, 2004. Compl. ¶ 8; Motion at 5-6. Mr. O'Neal then underwent knee surgery in January 2005. Compl. ¶ 8; Motion at 6.

Mr. O'Neal treatment has continued in Hawai'i to the present time and he alleges numerous other bad-faith actions by Century, including the following. First, when Mr. O'Neal's first nurse case manager resigned for personal reasons, Century did not replace her for more than a year. Compl. ¶ 10-11. Century later fired Mr. O'Neal's second nurse case manager and replaced her with an apparently uncertified case manager. Id. ¶ 15-16. Second, after Mr. O'Neal had already received a successful trial spinal cord stimulator ("SCS") implant, Century rescinded its prior written approval for a permanent implant. Id. ¶ 13-15. When

6

Mr. O'Neal appealed that decision, Century did not re-approve the permanent implant until approximately nine months after having initially approved the SCS procedure. Id. ¶ 18. After Mr. O'Neal received the second approval and underwent an evaluation process to ready him for a second SCS implant, Century filed a "Notice of Suspension of (Workers') Compensation Benefits and Request for Hearing". Id. ¶ 19-21. When Mr. O'Neal's doctor apparently decided to proceed with the SCS procedure despite the suspension notice, the permanent SCS implant was only partially successful because of "scar tissue [that] had accumulated in Mr. O'Neal's spine during the period of [Century's] delay" in re-approving the procedure. Id. ¶ 22-23. Third, despite being verbally ordered by a CNMI workers' compensation hearing officer (as discussed further below) to "maintain medical treatments and housing subsidy," Century has refused approval of certain treatments. Id. ¶ 27-28.

Mr. O'Neal also cursorily alleges that Century has defamed and slandered him. Id. ¶ 38-39.[3/] He alleges that Century "accused Mr. O'Neal of non-compliance with treatment recommendations [and] refusal to submit to medical procedures, proposed an investigation for fraud, [and] hired an investigator to videotape and stalk Mr. O'Neal." Id. ¶ 38.

---

[3/] Paragraphs 39 and 40 of the Complaint are misnumbered. The Court will use the correct numbering here.

**IV.  <u>Workers' Compensation Commission Hearing and Subsequent</u>**
**<u>Events</u>**

On around May 17 or 18, 2011, Century filed a "Notice
of Suspension of (Workers') Compensation Benefits and Request for
Hearing" before the CNMI Workers' Compensation Commission, and
stopped paying Mr. O'Neal's medical expenses and other related
expenditures. Compl. ¶ 21; Corpuz Decl. ¶ 7, 9. The Commission
heard Century's administrative motion on approximately August 25,
2011. Compl. ¶ 24.

Medical considerations precluded Mr. O'Neal from
traveling to the CNMI for the hearing. O'Neal Decl. ¶ 17.
However, he was able to attend the hearing by telephone. Compl.
¶ 24. Further, he obtained a "volunteer attorney" in the CNMI to
represent him, although Century apparently obtained the
disqualification of Mr. O'Neal's local counsel such that
Mr. O'Neal had no physical representation at the hearing.[4/]
Compl. ¶ 24, 26. Nearly two years later, a final decision in
those proceedings has not yet been issued. <u>Id.</u> ¶ 24. However, at
the time of the hearing, the hearing officer verbally ordered

_____

[4/] A typographical error in Mr. O'Neal's Complaint appears
to suggest that Century had Mr. O'Neal's Hawai'i counsel
disqualified, but the Court understands from the context that
Mr. O'Neal was referring to his Saipan-based counsel. Century
asserts that Mr. O'Neal continues to be represented by local
counsel in the CNMI proceedings, Reply at 7, but Century's
supporting affidavit only confirms that "[Mr.] O'Neal retained an
attorney in Saipan." Corpuz Decl. ¶ 9. At the August 5, 2013,
hearing on the instant Motion, Century referenced ongoing
discussions with Mr. O'Neal's Saipan-based counsel. Mr. O'Neal
did not dispute that he continues to be represented in the CNMI,
although he reiterated that the attorney is working pro bono.

Century "to maintain medical treatments and housing subsidy." Id. ¶ 27. Century notes that its total payments on Mr. O'Neal's behalf exceed one million dollars. Motion at 5; Corpuz Decl. ¶ 9.

In his Complaint, Mr. O'Neal alleges the following claims against Century: (1) bad faith, (2) negligent and/or intentional infliction of emotional distress, (3) violation of Hawai'i's Unfair Competition or Practices Act, and (4) defamation and slander. Compl. at 2, 9-11.

**STANDARD**

**I.   Standard for Motion to Dismiss for Lack of Personal Jurisdiction**

The Court's exercise of personal jurisdiction over a party may be challenged under Federal Rule of Civil Procedure ("Rule") 12(b)(2). The plaintiff bears the burden of showing that the Court has jurisdiction over the defendant. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). The Court may allow the parties to submit affidavits, allow affidavits plus discovery, or conduct an evidentiary hearing. Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).

When the Court rules without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts" to avoid dismissal.[5/] Wash. Shoe, 704 F.3d at 672. The Court must take as true all uncontroverted facts in

---

[5/] "If the plaintiff succeeds in meeting that prima facie burden, then the district court may still order an evidentiary hearing or the matter may be brought up again at trial." Fiore v. Walden, 688 F.3d 558, 574 n.13 (9th Cir. 2011) (citation omitted).

the complaint but may not assume the truth of allegations which are contradicted by affidavit. CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011). The Court must resolve all factual disputes in the plaintiff's favor. Wash. Shoe, 704 F.3d at 672. Nonetheless, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." Fiore, 688 F.3d at 574-75 (quoting Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007)).

## II.   Standard for Motion to Dismiss for Lack of Venue or, in the Alternative, Transfer

The general venue statute, 28 U.S.C. § 1391(b), states:

A civil action may be brought in -

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or

(3) if there is no district in which the action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Pursuant to 28 U.S.C. § 1406(a), if venue in the district is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Even if venue is proper in the district pursuant to 28 U.S.C. § 1391, the district court may transfer the case to another district for the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). Transfer under this section is limited "to those federal districts in which the action 'might have been brought.'" Id. "The purpose of this section is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Hi-Pac, Ltd. v. Avoset Corp., 980 F. Supp. 1134, 1139 (D. Haw. 1997) (internal quotation marks and citations omitted).

## DISCUSSION

Century argues that (1) Mr. O'Neal's Complaint should be dismissed for lack of personal jurisdiction over Century; (2) Mr. O'Neal's Complaint should be dismissed because venue in this forum is improper; or (3) in the alternative, the litigation should be transferred to the District of the Northern Mariana Islands. For the following reasons, the Court determines that it has specific personal jurisdiction over Century and that venue is proper in this district. The Court further determines that transfer of venue is not possible in this case.

## I.    Personal Jurisdiction

To subject a nonresident defendant to suit when no federal statute authorizes personal jurisdiction, as here, the district court applies the law of the state in which the court sits. Fed. R. Civ. P. 4(k)(1)(A); CollegeSource, Inc. v.

AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011) (citation omitted). Because Hawai'i's long-arm statute, Haw. Rev. Stat. § 634-35, is coextensive with the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, Cowan v. First Ins. Co., 608 P.2d 394, 399 (Haw. 1980), the Court need only determine whether due process permits the exercise of personal jurisdiction, see, e.g., Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-801 (9th Cir. 2004).

For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process requirements, that defendant must have "certain minimum contacts" with the relevant forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" CollegeSource, 653 F.3d at 1073-74 (quoting Int'l Shoe Co. v. State of Wash., Office of Unemp't Comp. & Placement, 326 U.S. 310, 316 (1945)). These minimum contacts represent the "outer boundaries" of due process. Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853 (2011).

Due process is satisfied if the Court has "either general or specific" jurisdiction over a nonresident defendant. Doe v. Am. Nat'l Red Cross, 112 F.3d 1048, 1050 (9th Cir. 1997). Here, the Court finds that there is no general personal jurisdiction over Century in this district, but that it may assert specific personal jurisdiction over Century for purposes of this action.

## I.A. **General Personal Jurisdiction**

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear, 131 S. Ct. at 2851 (quoting Int'l Shoe, 326 U.S. at 317). For a court to have general personal jurisdiction over a nonresident defendant like Century, "the defendant must engage in 'continuous and systematic general business contacts' that 'approximate physical presence' in the forum state." CollegeSource, 653 F.3d at 1074 (citations omitted) (quoting Goodyear, 131 S. Ct. at 2851). This amounts to "an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Schwarzenegger, 374 F.3d at 801.

Century persuasively argues that the Court does not have general jurisdiction over Century because Century's "contacts with the State of Hawaii fall significantly short of the exacting standard [for general jurisdiction] established by the Ninth Circuit and other Courts." Motion at 9. Mr. O'Neal does not contest this; instead, he argues that the Court has specific jurisdiction over Century. Opp. at 7-8. Accordingly, the Court concludes that it does not have general personal jurisdiction over Century. The Court therefore turns to whether it has

specific personal jurisdiction over Century for purposes of this action.

**I.B.** **Specific Personal Jurisdiction**

The basis of specific personal jurisdiction is "an affiliatio[n] between the forum and the underlying controversy." Goodyear, 131 S. Ct. at 2851 (alteration in original) (internal quotation marks omitted) (quoting Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1136 (1966)). In contrast to the "all-purpose" nature of general personal jurisdiction, specific personal jurisdiction limits the court to adjudicating "issues deriving from, or connected with, the very controversy that establishes jurisdiction." Id. (quoting Von Mehren & Trautman, supra, at 1136) (internal quotation marks omitted). To determine whether specific personal jurisdiction exists, a district court must employ a three-prong test to evaluate the nature and quality of the defendant's contacts with the forum state:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 801-802 (quoting Lake v. Lake, 817
F.2d 1416, 1421 (9th Cir. 1987)). To satisfy due process
requirements, jurisdiction in the forum must meet all three
prongs. Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267,
270 (9th Cir. 1995).

The plaintiff bears the burden of satisfying the first
two prongs of the Schwarzenegger test for specific personal
jurisdiction. 374 F.3d at 801-02 (citation omitted). If the
plaintiff succeeds in satisfying the first two requirements, then
the burden shifts to the defendant "to set forth a 'compelling
case' that the exercise of jurisdiction would not be reasonable."
Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78
(1985)) (emphasis added). Notwithstanding the Schwarzenegger
test, the court may exercise jurisdiction "with a lesser showing
of minimum contact[s] than would otherwise be required if
considerations of reasonableness dictate." Haisten v. Grass
Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th
Cir. 1986) (emphasis omitted) (citing Burger King, 471 U.S. at
477).

**I.B.1    Purposeful Availment or Direction**

Under the first Schwarzenegger prong, a defendant in a
tort case must "purposefully direct" its activities towards the
forum state in order to be subject to specific personal
jurisdiction there. 374 F.3d at 802. A district court determines
whether the defendant purposefully directed its actions toward
the forum state by applying the "effects" test that derives from

15

the Supreme Court's decision in <u>Calder v. Jones</u>, 465 U.S. 783
(1984), with a "focus[] on the forum in which the defendant's
actions were felt, whether or not the actions themselves occurred
within the forum." <u>Yahoo! Inc. v. La Ligue Contre le Racisme et
l'Antisemitisme</u>, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc).
The defendant must be alleged to have "(1) committed an
intentional act, (2) expressly aimed at the forum state,
(3) causing harm that the defendant knows is likely to be
suffered in the forum state." <u>CollegeSource</u>, 653 F.3d at 1077
(citation omitted) (internal quotation marks omitted). "Thus,
courts may exercise personal jurisdiction over a defendant who
engages in an intentional act that causes harm in the forum
state, even if that act takes place outside of the forum state."
<u>Wash. Shoe Co. v. A-Z Sporting Goods, Inc.</u>, 704 F.3d 668, 673
(9th Cir. 2012).

### I.B.1.a   Intentional actions

The first step of the <u>Calder</u> effects test asks whether
the defendant's alleged acts were intentional. "Intentional
torts, in particular, can support personal jurisdiction over a
nonresident defendant who has no other forum contacts." <u>Fiore</u>,
688 F.3d at 577. The <u>Calder</u> test lends "intentional act" a
"specialized meaning," such that a court must "construe 'intent'
in the context of the 'intentional act' test as referring to an
intent to perform an actual, physical act in the real world,
rather than an intent to accomplish a result or consequence of
that act." <u>Schwarzenegger</u>, 374 F.3d at 806.

Here, all but one of Mr. O'Neal's claims allege intentional torts. Century does not dispute the intentional nature of its alleged actions, which include delaying Mr. O'Neal's back and knee surgeries following his MRI, causing Mr. O'Neal to suffer a pulmonary embolism. Mr. O'Neal has satisfied the first prong of the <u>Calder</u> test for purposeful direction.

### I.B.1.b   Express aiming

The second part of the <u>Calder</u> test for purposeful direction is the "express aiming" requirement. The "express aiming" requirement is satisfied "when 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" <u>Dole Food Co. v. Watts</u>, 303 F.3d 1104, 1111 (9th Cir. 2002) (quoting <u>Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.</u>, 223 F.3d 1082, 1087 (9th Cir. 2000)). This is also known as "individual targeting," or "actions taken outside the forum state for the purpose of affecting a particular forum resident or a person with strong forum connections." <u>Fiore</u>, 688 F.3d at 577.

### I.B.1.b.1 Whether Mr. O'Neal's move to Hawai'i was unilateral

Century argues that Mr. O'Neal moved to Hawai'i unilaterally and that, accordingly, the Court must find that Century did not "expressly aim" its actions at Hawai'i. Motion at 5, 14, 16; Reply at 5. The Supreme Court has held that "a defendant will not be haled into a jurisdiction solely as the result of . . . the 'unilateral activity of another party or a

third person[.]'" <u>Burger King</u>, 471 U.S. at 475 (quoting

<u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408,

417 (1984)). The Supreme Court has observed, however, that

"[j]urisdiction is proper . . . where the contacts proximately

result from actions by the defendant himself that create a

'substantial connection' with the forum State." <u>Id.</u> (quoting

<u>McGee v. Int'l Life Ins. Co.</u>, 355 U.S. 220, 223 (1957) (emphasis

omitted)).

      Century's argument relies on two Ninth Circuit

opinions, <u>Hunt v. Erie Insurance Group</u>, 728 F.2d 1244 (9th Cir.

1984), and <u>Petrik v. Public Service Mutual Insurance Co.</u>, 879

F.2d 682 (9th Cir. 1989). In <u>Hunt</u>, the plaintiff was injured in a

car accident in Colorado; following a coverage dispute, her

mother arranged for her to move to California for medical care.

728 F.2d at 1245. The plaintiff subsequently sued the defendant

insurer for bad faith. <u>Id.</u> at 1246. The Ninth Circuit found that

the plaintiff's "decision to move to California cannot be

attributed to [the insurer]. . . . [I]t ultimately was Hunt's

decision to move to California in order to receive the

treatment." <u>Id.</u> at 1247. Accordingly, the court found that

characterizing the <u>plaintiff's</u> decision as "purposeful availment"

by the defendant would "frustrate the very policy behind that

requirement." <u>Id.</u>

      Similarly, in <u>Petrik</u>, the plaintiff unilaterally

decided to move to Montana after suffering an injury in another

state; the symptoms of that injury later manifested themselves in

Montana. 879 F.2d at 683. The Ninth Circuit concluded that the defendant insurer's "contacts with Montana are due solely to the unilateral activities of Petrik" and thus, "[a]ssertion of personal jurisdiction over [the insurer] would violate due process." Id. at 685.

The Court finds the facts in the above cases distinguishable from those underlying Mr. O'Neal's claims. In both Hunt and Petrik, the critical fact supporting the Ninth Circuit's reasoning was that the plaintiff unilaterally moved to the forum state. Mr. O'Neal persuasively contends that Hunt and Petrik do not apply here because the Hotel, as the alter ego of Century for workers' compensation purposes, encouraged and facilitated Mr. O'Neal's travel to Hawai'i for treatment--and therefore Mr. O'Neal did not unilaterally decide to leave the CNMI.[6/] Opp. at 12-13.

During the hearing on the instant Motion, Century expressly conceded that the Hotel's actions in sending Mr. O'Neal

_____

[6/] Mr. O'Neal also seeks to distinguish Hunt and Petrik because (1) those decisions did not apply the Calder effects test and (2) "the forum invoked in [Hunt] was not the situs of the allegedly insured events," whereas here, insured events "occurred in or were aimed at the state of Hawai'i." Opp. at 12-15. Mr. O'Neal reasserted the second argument at the hearing on the instant Motion, contending that the insurance agreement contemplated litigation in Hawai'i as the location of an insured event. These arguments are not persuasive. First, that the Hunt and Petrik courts did not apply Calder is immaterial, since both decisions comport with Supreme Court precedents and are consonant with Calder's analysis and its underlying principles. Second, Hawai'i is not the location of the allegedly insured events; Mr. O'Neal was injured during the course of his employment in the CNMI. The insurance agreement merely contemplated litigation in Hawai'i if an insured event occurred in Hawai'i. Motion, Ex. 1, pp. 4-5.

to Hawaiʻi for treatment could be imputed to Century for purposes of deciding this Motion (though counsel maintained that Century's actions nonetheless did not reach the level of "purposeful direction"). Nevertheless, because the alter-ego issue is critical to the personal jurisdiction question, the Court briefly evaluates it below.

Since both Century and the Hotel are located in the CNMI, CNMI law would likely define their relationship.[7] The CNMI's Workers' Compensation Law states, in defining "employer": "If the employer is insured, [the term 'employer'] includes his insurer as far as applicable." 4 N. Mar. I. Code § 9302(m) (2011). Moreover, the statute notes that "[i]n any case where the employer is not a self-insurer . . . [j]urisdiction over the employer by the administrator, the commission, or any court under this chapter shall be sufficient to confer jurisdiction over the carrier.". Id. § 9344(b). CNMI statutory law thus clearly indicates an alter-ego type relationship between the employer and the workers' compensation insurer. Moreover, Century itself has provided an exhibit showing that one of the Rules and Regulations of the CNMI's Workers' Compensation Commission prohibits an employee from changing physicians "without the prior written consent of the employer (or carrier)." Reply, Ex. 1. It appears that, under CNMI law, the Hotel's actions could be attributed to Century.

---

[7] Since CNMI and Hawaiʻi law appear to agree on this point, see infra, the Court need not reach the choice-of-law issue.

By comparison, Mr. O'Neal based his argument on Hawai'i Revised Statutes § 386-1, which states, "The insurer of an employer is subject to the employer's liabilities . . . and [is] entitled to rights and remedies under this chapter as far as applicable." Haw. Rev. Stat. § 386-1 (2012). In the only Hawai'i case interpreting this statute, the Hawai'i Supreme Court applied the plain language of the statute to find that the insurer, because it paid the injured employee's expenses on behalf of the employer, assumed the role of "employer" for purposes of the suit. First Ins. Co. of Haw. v. A & B Props., Inc., 271 P.3d 1165, 1166 n.1 (Haw. 2012). Thus, it appears that under Hawai'i law, the Hotel's actions could also be attributed to Century.

In sum, Mr. O'Neal's theory that the Hotel's actions can be imputed to Century appears sound under both CNMI law and Hawai'i law. The Court therefore now examines whether Mr. O'Neal has shown that the Hotel consented to his move.

Based on the record before the Court, Mr. O'Neal has made a prima facie showing that the Hotel consented to his move to Hawai'i and even facilitated it. The Hotel took several actions showing its consent: (1) the Hotel gave Mr. O'Neal a ticket to Hawai'i; (2) once Mr. O'Neal was in Hawai'i, the Hotel expressed its written support for Mr. O'Neal's continued care; (3)the Hotel assigned Mr. O'Neal two work-related tasks to perform while in Hawai'i; and (4) the Hotel kept Mr. O'Neal on its payroll through at least March 2004.

21

The Court finds that Mr. O'Neal has alleged facts sufficient to show that the Hotel sent him to Hawai'i for treatment. Because, as discussed above, the Court can impute the Hotel's actions to Century, the Court concludes that Century assented to and facilitated Mr. O'Neal's move to Hawai'i. Therefore, <u>Hunt</u> and <u>Petrik</u> do not control this case.

### I.B.1.b.2 Express aiming

Having concluded for purposes of this Motion that Mr. O'Neal's move to Hawai'i was not unilateral, the Court now examines whether Century's alleged actions otherwise meet the standard for "express aiming." Mr. O'Neal alleges that beginning in April 2004, Century committed torts of bad faith against Mr. O'Neal while knowing that Mr. O'Neal was a Hawai'i resident. Opp. at 12; <u>see also</u> Compl. § 1; Villanueva Decl. § 4. Century does not dispute that from April 2004 onwards, Century knew Mr. O'Neal was residing in Hawai'i. The Court finds that Mr. O'Neal has made a prima facie showing that Century "expressly aimed" its actions towards Hawai'i. Therefore, Mr. O'Neal has satisfied the second prong of the <u>Calder</u> test for purposeful direction.

### I.B.1.c   Actions causing harm in Hawai'i

The third and final part of the <u>Calder</u> test for purposeful direction looks at the location of the harm that Century allegedly caused. The general standard is that "the conduct at issue caused foreseeable harm in the forum." <u>Fiore</u>, 688 F.3d at 581. Harm in the forum stems from "[t]he result or

22

consequence of the [tortious] act." See Schwarzenegger, 374 F.3d at 806. Mr. O'Neal argues that, because Mr. O'Neal was a Hawai'i resident when Century allegedly first committed bad faith against him, Century should have foreseen harm to Mr. O'Neal in Hawai'i. Opp. at 17. This is persuasive; when Century delayed its approval of Mr. O'Neal's treatments, it should have foreseen that Mr. O'Neal would suffer the "results or consequences" of such a decision in Hawai'i. Schwarzenegger, 374 F.3d at 806.

Century does not contest that the harm occurred in Hawai'i. Century's argument that Mr. O'Neal's claims are "directly linked" to his injury in the CNMI does not alter the fact that Mr. O'Neal was a Hawai'i resident at the time of Century's alleged intentional tortious acts.

Thus, Mr. O'Neal satisfies the third prong of the Calder test for purposeful direction.

### I.B.1.d    Conclusion as to purposeful direction

The Court finds that Mr. O'Neal has presented a prima facie case that he did not move to Hawai'i unilaterally and that Century purposefully directed its activities toward him knowing that he was a Hawai'i resident. The Court emphasizes that its finding here approaches the boundaries of the purposeful direction analysis, such that a lesser showing of contacts would not have been persuasive. The Court now moves on to the second and third prongs of the Schwarznegger test for personal jurisdiction.

23

### I.B.2       Arising out of Forum-Related Activities

The second prong of the <u>Schwarzenegger</u> jurisdictional analysis is met if the claim "arises out of or relates to the defendant's forum-related activities." 374 F.3d at 801-02 (citation omitted). Courts in the Ninth Circuit employ a "but for" test to determine whether a claim arises out of forum-related activities--in other words, "[a plaintiff] must show that he would not have suffered an injury 'but for' [the defendant's] forum-related conduct." <u>Menken v. Emm</u>, 503 F.3d 1050, 1058 (9th Cir. 2007) (citing <u>Myers v. Bennett Law Offices</u>, 238 F.3d 1068, 1075 (9th Cir. 2001)).

At the hearing on the instant Motion, Century conceded the second prong of the <u>Schwarzenegger</u> test. Therefore, the Court can quickly conclude that Mr. O'Neal would not have suffered his alleged harm but for Century's alleged bad faith delay of Mr. O'Neal's treatment in Hawai'i.

### I.B.3       Reasonableness

Because Mr. O'Neal has satisfied both the first and second prongs of the <u>Schwarzenegger</u> test for specific personal jurisdiction, the burden now shifts to Century "to set forth a 'compelling case' that the exercise of jurisdiction would <u>not</u> be reasonable." <u>Schwarzenegger</u>, 374 F.3d at 801-02 (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476-78 (1985)). In making a reasonableness determination, the Court balances the following seven factors:

>       (1) The extent of the defendant's purposeful
>       interjection into the forum state's affairs;

24

(2) the burden on the defendant of defending in the forum;

(3) the extent of conflict with the sovereignty of the defendant's state;

(4) the forum state's interest in adjudicating the dispute;

(5) the most efficient judicial resolution of the controversy;

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

(7) the existence of an alternative forum.

Fiore, 688 F.3d at 582-83. The Court balances all seven factors, recognizing that none of the factors is dispositive in itself. Id.

### I.B.3.i   Extent of Century's purposeful interjection

The Ninth Circuit has found "that circumstances may exist where 'the level of purposeful interjection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction.'" Fiore, 688 F.3d at 583 (quoting Dole Food, 303 F.3d at 1115). Such circumstances do not exist here. As discussed above, Mr. O'Neal has made a prima facie showing that Century intentionally sent him to Hawai'i for medical treatment and then allegedly committed the tort of bad faith against him. This factor weighs in favor of Mr. O'Neal.

### I.B.3.ii   Burden on Century

The Court recognizes that "a defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless 'the inconvenience is so great as to constitute a deprivation of due process, it will not overcome

clear justifications for the exercise of jurisdiction.'"
Panavision Int'l v. Toeppen, 141 F.3d 1316, 1321, 1323 (9th Cir. 1998) (internal citations omitted). Moreover, courts in this Circuit have observed that "[r]ecent advancements in communication and transportation . . . have greatly reduced the inconvenience once associated with defending in another forum." Robinson Corp. v. Auto-Owners Ins. Co., 304 F. Supp. 2d 1232, 1240 (D. Haw. 2003) (citing Panavision, 141 F.3d at 1323).

Century has no offices, employees, or real or personal property in Hawai'i. Moreover, at least three of its material witnesses are Philippine nationals whose U.S. visas require special immigration clearance to travel to Hawai'i. Motion at 17. Century emphasized this point at the hearing on the instant Motion. However, one of those witnesses (along with Century's counsel) traveled to Hawai'i in March 2009 in connection with handling Mr. O'Neal's claim. Smith Decl. § 9. That travel occurred almost one year after the May 2008 enactment of the immigration law that Century references. Mariano Decl. § 3. It seems reasonable that similar immigration clearance could be obtained for purposes of this litigation. Even if this were not possible, witness testimony could be heard via videoconference. See Fed. R. Civ. P. 43(a) ("For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.").

Nevertheless, litigating this matter in Hawai'i imposes some burden on Century. This factor slightly favors Century.

### I.B.3.iii Conflict with the sovereignty of the Commonwealth of the Northern Mariana Islands

Century asserts that the CNMI has a "strong public interest in administering its Workers' Compensation Laws." Reply at 5. Century further asserts that Mr. O'Neal's tort claims "are so intertwined with this strong public interest . . . as to create a prospective conflict of sovereignty" and that "there exists significant conflict of law issues" between Hawai'i and the CNMI. Id. at 6. Century overestimates the importance of sovereignty in this case, because the sovereignty of a defendant's state is not a significant consideration in actions between citizens of the United States. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 841 (9th Cir. 1986); see also Powerhouse Diesel Servs., Inc. v. Tinian Stevedore, Inc., No. 93-0003, 1993 WL 377437, at *4 (D. N. Mar. I. Sept. 15, 1993) (citing the Decker Coal Court's finding that sovereignty interests are of "minimal" importance).

The Hawai'i Supreme Court has explicitly recognized that bad faith is an independent tort claim that does not arise under the state Workers' Compensation Act. Hough v. Pac. Ins. Co., 927 P.2d 858, 867-70 (Haw. 1996) ("[A] breach of the implied contractual duty of good faith gives rise to the independent tort cause of action for a third-party beneficiary."). For Hawai'i law to find liable a CNMI insurer who acts in bad faith against a Hawai'i resident is hardly an infringement on the CNMI's

27

sovereignty. To conclude otherwise would equate to a declaration that no state can protect its residents against tortious actions by a foreign corporation.

Accordingly, this factor is neutral.

### I.B.3.iv  Interest of Hawai'i

"A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 473 (citation omitted). Moreover, Hawai'i recognizes a third-party bad faith claim against a workers' compensation insurer. Hough, 927 P.2d at 869-70 (explaining that an employee has a third-party claim, rather than a first-party claim, because "[a]n employee is an intended third-party beneficiary of an employer's contract with an insurance company for workers' compensation coverage") (footnote omitted)).

Century argues, unconvincingly, that Hawai'i "has no real interest in adjudicating claims which are directly linked to a 'work related' injury" that took place in the CNMI, particularly "when administrative proceedings are pending relating to similar issues raised by [Mr.] O'Neal in this civil proceeding." Motion at 18. As discussed above, Mr. O'Neal's tort claims are separate from his workers' compensation claims. Hough, 927 P.2d at 869 (finding that a bad faith claim is "not based on the original work injury"). That finding bad faith would require interpreting CNMI workers' compensation law is immaterial; this Court can apply CNMI workers' compensation law, just as the

28

federal district court in the CNMI could apply Hawai'i bad faith law. See Applied Med. Distrib. Corp. v. Surgical Co. BV, 587 F.3d 909, 920 (9th Cir. 2009) ("It warrants repeating that federal judges are quite capable of applying foreign law.") (citing E. & J. Gallo Winery v. Andina Licores S.A., 446 F.3d 984, 991 (9th Cir. 2006)).

Hawai'i's interest in regulating bad faith by insurance companies is particularly pronounced when a Hawai'i resident has been tortiously injured. See Robinson, 304 F. Supp. 2d at 1241.

This factor strongly favors Mr. O'Neal.

### I.B.3.v   Judicial efficiency

"[C]onsideration of the most efficient judicial resolution is 'no longer weighted heavily given the modern advances in communication and transportation.'" Panavision, 141 F.3d at 1323 (quoting Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 129 (9th Cir. 1995)). Mr. O'Neal asserts that his witnesses include his numerous medical providers in Hawai'i. Opp. at 22. Century indicates that its material witnesses include three Philippine nationals who live in the CNMI.

However, the sheer number of witnesses is not as important as the materiality of their potential testimony. Here, both parties have witnesses whose testimony will be material, and neither party argues that its witnesses are more material than the other's.

In addition, as discussed above, this Court would have to apply CNMI workers' compensation law to decide Mr. O'Neal's

bad faith claims. Specifically, this Court would need to determine which benefits CNMI law accorded to Mr. O'Neal in order for the Court to find that Century acted in bad faith with respect to providing those benefits. Similarly, a CNMI court would have to interpret the nuances of Hawai'i bad faith law to decide the same claims. Thus, neither court would have an efficiency advantage over the other.

Hence, this factor as a whole is neutral.

### I.B.3.vi  Importance of forum to plaintiff's interest

Century argues that "the burden on the plaintiff is not a relevant consideration . . . in determining whether jurisdiction is reasonable." Motion at 17. Indeed, "[i]n evaluating the convenience and effectiveness of relief for the plaintiff, the Ninth Circuit has given little weight to the plaintiff's inconvenience." Panavision, 141 F.3d at 1324 (internal citations omitted).

Here, however, Mr. O'Neal is not merely inconvenienced by litigating in the CNMI; he argues that he is physically unable to travel outside of Hawai'i. Opp. at 22. That presents a significant barrier to litigating in the CNMI that overcomes the usual minimal weight accorded to the plaintiff's inconvenience. Panavision, 141 F.3d at 1324.[8/] At the hearing on the instant

---

[8/] Century argues that Mr. O'Neal has retained counsel in the CNMI and "has actively participated in administrative proceedings" there. Motion at 19. As discussed above, Mr. O'Neal was physically unable to attend the August 25, 2011, hearing in the CNMI and had to appear by telephone. Although he obtained a "volunteer attorney" for the hearing, Mr. O'Neal reports that Century had Mr. O'Neal's local counsel disqualified from

Motion, Century acknowledged that Mr. O'Neal is unable to travel to Saipan. Therefore, this factor weighs strongly in favor of Mr. O'Neal.

### I.B.3.vii Existence of alternative forum

Century contends that the District of the Northern Mariana Islands is an alternative forum for this dispute. Motion at 18-19. "The plaintiff 'bears the burden of proving the unavailability of an alternative forum[.]'" Bauman v. DaimlerChrysler Corp., 644 F.3d 909, 928 (9th Cir. 2011) (quoting Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1133-34 (9th Cir. 2003)). Here, Mr. O'Neal has not argued that there is no alternative forum for his claims. Because Mr. O'Neal has failed to meet this burden, this factor weighs in favor of Century.

### I.B.4   Conclusion as to Personal Jurisdiction

Taken as a whole, Century has not made a "compelling case" that exercise of jurisdiction over it in Hawai'i would be unreasonable. See Fiore, 688 F.3d at 585. Due process is met when there is "'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" Burger King, 471 U.S. at 472 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286

---

participating in the hearing. This contradicts Century's portrayal of Mr. O'Neal's minimal inconvenience in litigating in the CNMI. Accordingly, the Court finds Century's argument unpersuasive.

(1980)). Consequently, the Court must balance the above seven factors to determine whether exercising jurisdiction is proper. Fiore, 688 F.3d at 582-83.

Tallying the above factors, three weigh in Mr. O'Neal's favor, two weigh in Century's favor, and two are neutral. Although the balancing process is not merely numerical, this shows that the balance is in favor of Mr. O'Neal; moreover, two factors strongly favor Mr. O'Neal. This balance precludes a finding that Century has met its burden of establishing a "compelling case" that the exercise of jurisdiction would be unreasonable. Schwarzenegger, 374 F.3d at 801-02 (quoting Burger King, 471 U.S. at 476-78).

Moreover, as Mr. O'Neal argues, even if the Court found that the reasonableness factors presented a "close call," Century still would not have presented a "compelling case." Roth v. Garcia Marquez, 942 F.2d 617, 625 (9th Cir. 1991); Opp. at 24. See also Harris Rutsky, 328 F.3d at 1134 (finding that even if the reasonableness factors are a "wash" because both parties have factors weighing in their favor, this still does not present a "compelling case"). The Court does not find the reasonableness factors to be a "close call" or a "wash," but even if it did, Century would not have met its burden.

The Court reiterates that it has carefully considered Century's argument that Hunt and Petrik compel the Court to find a lack of personal jurisdiction. Motion at 13-14. If Mr. O'Neal had unilaterally elected to travel to Hawai'i for treatment,

rather than being sent there by the Hotel, then <u>Hunt</u> and <u>Petrik</u> would require the Court to grant Century's motion. But because, as Century's counsel conceded at the motion hearing, the Hotel's actions in sending Mr. O'Neal to Hawai'i for treatment can be imputed Century for purposes of deciding this motion, <u>Hunt</u> and <u>Petrik</u> do not control this case.

　　　　The Court therefore DENIES Century's Motion to Dismiss on grounds of lack of personal jurisdiction.

## II.  **Improper Venue**

　　　　Century argues that venue in this district is improper because Century does not reside in this district. Under 28 U.S.C. § 1391, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Corporations are "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Thus, the question of proper venue collapses into the question of personal jurisdiction. The Court has found that it may exercise personal jurisdiction over Century with respect to Mr. O'Neal's action. For purposes of determining the proper venue for this action, Century is therefore "deemed to reside" in this district. Venue is thus proper in this Court under § 1391(c)(2). <u>See, e.g.</u>, <u>Robinson</u>, 304 F. Supp. 2d at 1242 (citing <u>Icon Indus. Controls Corp. v. Cimetrix, Inc.</u>, 921 F. Supp. 375, 382 (W.D. La. 1996)).

In this case, venue is also proper under 28 U.S.C. § 1391(b)(2), which permits bringing suit in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Many of the events that form the basis of Mr. O'Neal's claims occurred in Hawai'i, including the various injuries that he allegedly suffered as a result of Century's delays, the failure to replace his first case manager, and the replacement of his second nurse case manager by a less qualified individual. Moreover, the alleged defamation and slander, although cursorily alleged, also appears to have occurred in Hawai'i. Even if Century's decisions were all taken in the CNMI, clearly a "substantial part" of the events giving rise to Mr. O'Neal's claims occurred in Hawai'i. Venue is thus also proper in this Court under § 1391(b)(2).[9/]

Therefore, the Court DENIES Century's Motion to Dismiss.

### III.  Transfer of Venue

Century argues that, even if venue in Hawai'i is proper, this action should be transferred to the District of the Northern Mariana Islands "for the convenience of the parties and witnesses, in the interest of justice," under 28 U.S.C. § 1404(a).

---

[9/] Because venue lies in Hawai'i, the Court need not consider Mr. O'Neal's alternative argument that the Court should transfer venue under under 28 U.S.C. § 1406(a) rather than dismiss the case. Opp. at 26.

Ordinarily, because the Court has personal jurisdiction over Century and venue is otherwise proper in this district, the Court would evaluate the merits of a transfer under § 1404(a). However, Century overlooks a critical element of the statute: "Transfers from a district court of the United States to . . . the District Court for the Northern Mariana Islands . . . shall not be permitted under this section." 28 U.S.C. § 1404(d). There are no reported cases applying this language, which Congress enacted in December 2011. The plain language of § 1404(d), however, clearly precludes transferring venue to the District of the Northern Mariana Islands under § 1404(d).

The Court therefore DENIES Century's Motion to Transfer Venue.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court DENIES Century's Motion to Dismiss for Lack of Personal Jurisdiction and/or Improper Venue, or in the Alternative, to Transfer Venue.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 14, 2013



Alan C. Kay
Sr. United States District Judge

O'Neal v. Century Ins. Co., Civ. No. 13-00058 ACK RLP, Order Denying Defendant's Motion To Dismiss for Lack of Personal Jurisdiction and/or Improper Venue, or in the Alternative, To Transfer Venue